**DeNITTIS OSEFCHEN PRINCE, P.C.**
Stephen P. DeNittis, Esq. (SD-0016)
525 Route 73 North, Suite 410
Marlton, NJ 08053
(856) 797-9951
sdenittis@denittislaw.com

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis, Esq.
(*Pro Hac Vice Pending*)
14 NE 1st Avenue, Suite 400
Miami, Florida 33132
(305) 479-2299
efilings@shamisgentile.com

**HIRALDO P.A.**
Manuel S. Hiraldo, Esq.
(*Pro Hac Vice Pending*)
401 E. Las Olas Boulevard, Suite 1400
Ft. Lauderdale, Florida 33301
(954) 400-4713
mhiraldo@hiraldolaw.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

FRANK EISENBAND,
individually and on behalf of all
others similarly situated,

        Plaintiff,

v.

JOHN C. HEATH, ATTORNEY AT LAW, PLLC
d/b/a LEXINGTON LAW FIRM,
a Utah professional limited liability company,

        Defendant.

_____/

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff, Frank Eisenband, brings this class action against Defendant, John C. Heath,
Attorney at Law, PLLC d/b/a Lexington Law Firm, and alleges as follows upon personal
knowledge as to himself and his own acts and experiences, and, as to all other matters, upon
information and belief, including investigation conducted by his attorneys.

1

## NATURE OF THE ACTION

1.      This putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA"), stems from Defendant's practice of harassing consumers nationwide with automated and prerecorded telemarketing calls.

2.      Defendant sells credit repair and monitoring services to consumers.  To drum-up new business, Defendant engages in intrusive telemarketing campaigns.

3.      Defendant is well-aware of the restrictions imposed by the TCPA, and has been previously sued for violating the TCPA.

4.      Nevertheless, Defendant engages in illegal telemarketing, targeting individuals nationwide, without their prior express consent and little regard for their privacy.

5.      Through this putative class action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals nationwide.  Plaintiff also seeks statutory damages on behalf of himself and members of the class, and any other available legal or equitable remedies resulting from the illegal actions of Defendant.

## JURISDICTION AND VENUE

6.      This Court has federal question jurisdiction because this case arises out of violations of federal law. 47 U.S.C. §227(b); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

7.      Venue is proper in the United States District Court for the District of New Jersey pursuant to 18 U.S.C. § 1391(b) and 1441(a) because Defendant is subject to personal jurisdiction in this Court as it regularly conduct business throughout the State of New Jersey.

## PARTIES

8.      Plaintiff is a natural person who, at all times relevant to this action, was a citizen of

New Jersey.

9.         Defendant is a Utah professional limited liability company whose principal office is located at 360 North Cutler Drive, Salt Lake City, Utah 84054.

10.       Defendant directs, markets, and provides its business activities throughout the United Stated, including New Jersey.

## THE TELEPHONE CONSUMER PROTECTION ACT

11.       The TCPA regulates and restricts the use of automatic telephone equipment.

12.       The TCPA protects consumers from unwanted calls that are made with autodialers and/or prerecorded messages.

13.       The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system or prerecorded message; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

14.       The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

15.       In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

16.       The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA.  According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and

inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

17.     In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express **written** consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012)(emphasis supplied).

18.     To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

19.     The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12).  In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

20.     "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id.* (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

21.     "'Telemarketing' occurs when the context of a call indicates that it was initiated

and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

22.     The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future. Id.*

23.     In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

24.     If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

25.     "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp., LLC*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. Jan. 30, 2017) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016), as revised (May 24, 2016)) (emphasis in original).

5

## FACTS

26.     On April 13, 2017, Defendant placed an automated call to Plaintiff's cellular telephone ending in 4149 (the "4149 Number") from the following spoofed[1] telephone number: 707-475-0008.

27.     Plaintiff received the call while at work.  He was disrupted by the call and had to stop what he was doing to answer his phone.

28.     Upon answering the call, Plaintiff heard a brief pause followed by a prerecorded message.  The prerecorded message stated that Plaintiff qualified for credit repair relief and discussed the availability of Defendant's credit repair services.

29.     Frustrated by this unsolicited call, and determined to learn the identity of the company that was harassing him during business hours, Plaintiff pressed the number 1, as instructed by the message, to speak with a live representative.

30.     Plaintiff was then transferred to an agent of Defendant, who stated that she was calling from "Lexington Law."  Plaintiff then heard someone say something to the agent, and the agent abruptly terminated the call.

31.     Defendant's call constitutes telemarketing as Defendant was attempting to market its credit repair services.

32.     Plaintiff has never had any type of relationship with Defendant.

33.     Plaintiff has never provided his telephone number to Defendant.

34.     At no point in time did Plaintiff provide Defendant with his express written consent or express consent to be contacted using an ATDS or a prerecorded message.

---

[1] "Spoofing occurs when a caller deliberately falsifies the information transmitted to your caller ID display to disguise their identity."  https://www.fcc.gov/consumers/guides/spoofing-and-caller-id.

35.     Plaintiff is the subscriber and sole user of the 4149 Number, and is financially responsible for phone service to the 4149 Number.

36.     Other recipients of Defendant's unsolicited calls, aggravated by the nuisance, disruption, and invasion of their privacy, have voiced their complaints in various on-line forums. The following is a small sample of the complaints posted by consumers:

- Calls me several times a day, never leaves a message. Also texts me... Says her name is Beth and she is from the Lexington Law Firm.

- I get calls from this number 2-3 times a day for the past few weeks. I tell them I'm not interested. I have good credit and don't need their services. I didn't sign up for credit help. Harassing me isn't going to get me to comply. Caller: Lexington Law Firm

- Some guy named Dan call me from 18002921512 Stating!!!! that he works for Lexington Law BS..'!!!! HOW DID THIS A**HOLE GET MY NUMBER....Caller: Lexington Law

- Stop harassing me. Caller: Lexington Law

- stop with the harrassing calls at all times and days - i don't want your service. Caller: lexington law

- This company robo-calls me EVERY SINGLE DAY. I've filed complaints with the Do Not Call Registry every day for a week. I've called the 800 number they give you to supposedly stop their calls. Nothing works. I'm ill and these calls disturb my rest every day. How do we make it STOP?????

- Like others here, I get a prerecorded message stating she is Kathy Reeves a paralegal from Lexington Law Firm wanting to fix our bad credit in response to our online request. We also don't have bad credit/debt and have not submitted any requests!

- they keep calling, I called the 800-422-4895 to remove my number from their call list, and they say that my number isn't on their call list to start with, but they keep calling me! Caller: Lexington Law Firm

- Lexington law firm. What? Who? I don't know them or want to. Caller: Lexington law firm

- Entered my information on Lending Tree.com then decided I din't need a loan and the agent was insisting on transfering my call to Lexington Law I was firm when I repeatedly said no I don't want Lexington Law's help or Lending Tree's and as soon as I hung up I received a call from Beth at Lexington Law after that I've had at least 3 calls a day from Lexington Law, I refuse to answer because I had already stated I did not want their help I keep getting emails and I have replied to stop contacting me ...

- Called at 8am on a SUNDAY MORNING. Unbelivable. I was planning on using this company, but not after being solicited!!!!! Definite clue that this is more of a company who is worried about SALES and their representatives most definitely are making commissions or get some type of incentive for supposedly 'helping' their customers - or in my case, potential customer. Caller: Lexington Law

- I've received two calls and a text message from "Lexington Law Firm" who apparently work on debt consolidation. They're looking for someone named Doris, who is most definitely not me, and as I'm the only female in my household and they're calling my cell phone, they have the wrong number. I replied to the text "stop" to stop receiving contact from them, and told both the men on the phone calls to take me off their list. This last call, the man told me it would take up to 7 business days for me to be taken off the list. I asked if that meant I was going to have to deal with these calls for the next week. He just said that's how long it can take to be taken off their list. I then asked for the name of the company and he hung up on me. Even if they are a legit debt consolidation service and I needed that, I would find one that doesn't harass innocent people daily

- I keep getting these harassing calls from Lexington Law. All day long, never signed up for this. Please stop!! [2]

37.       The fact that other individuals have received the same prerecorded messages as

Plaintiff demonstrates that Defendant has used prerecorded messages to harass thousands of individuals.

38.       Further, the impersonal and generic nature of Defendant's calls and prerecorded

messages demonstrates that Defendant utilized an ATDS in making the calls.

39.       Upon information and belief, Defendant utilized a combination of hardware and

---

[2] http://800notes.com/forum/ta-7e2c47cbd3c924d/lexington-law-firm.

software systems to make the calls at issue in this case. The systems utilized by Defendant have the current capacity or present ability to generate or store random or sequential numbers or to dial sequentially or randomly at the time the call is made, and to dial such numbers, *en masse*, in an automated fashion without human intervention.

40.       In fact, on its website, Defendant admits that it uses "artificial or prerecorded voice" messages and "autodialer[s]" to contact consumers.[3]

41.       Through its telemarketing calls, Defendant violated Plaintiff's substantive rights under the TCPA.

42.       Further, Plaintiff suffered the following injuries:

    a.   Invasion of his privacy;

    b.   Inconvenience;

    c.   Unwanted occupation of his time and mental energy;

    d.   Unwanted occupation of his cellular telephone;

    e.   Nuisance;

    f.   Trespass on his cellular telephone; and

    g.   Aggravation and annoyance.

## CLASS ALLEGATIONS

### PROPOSED CLASS

43.       Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

44.       Plaintiff brings this case on behalf of a Class defined as follows:

**All persons within the United States who, within the four years prior to the filing of this Complaint, received a**

---

[3] *See* https://www.lexingtonlaw.com/signup.

> **telephone call or text message made through the use of an automatic telephone dialing system and/or an artificial or prerecorded voice, from Defendant or anyone on Defendant's behalf, promoting Defendant's goods or services, to said person's cellular telephone number, who had not expressly consented in writing to receiving such calls.**

45.      Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the Class members number in the several thousands, if not more.

### NUMEROSITY

46.      Upon information and belief, Defendant has placed automated and/or prerecorded calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

47.      The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

### COMMON QUESTIONS OF LAW AND FACT

48.      There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

      a.  Whether Defendant made non-emergency calls to Plaintiff's and Class members' cellular telephones using an ATDS;

      b.  Whether Defendant made non-emergency prerecorded calls to Plaintiff's and Class members' cellular telephones;

c.   Whether Defendant can meet its burden of showing that it obtained prior express consent to make such calls;

d.   Whether Defendant's conduct was knowing and willful;

e.   Whether Defendant is liable for damages, and the amount of such damages; and

f.   Whether Defendant should be enjoined from such conduct in the future.

49.      The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely violates the TCPA is correct, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

50.      Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

51.      Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

52.      A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be

unduly burdened by individual litigation of such cases.

53.        The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I
## Violations of the TCPA, 47 U.S.C. § 227(b)
### (On Behalf of Plaintiff and the Class)

54.        Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

55.        It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice…to any telephone number assigned to a…cellular telephone service…." 47 U.S.C. § 227(b)(1)(A)(iii).

56.        Defendant – or third parties directed by Defendant – used equipment having the capacity to dial numbers without human intervention to make marketing telephone calls to the cellular telephones of Plaintiff and Class Members.

57.        Defendant – or third parties directed by Defendant – made prerecorded or artificial voice calls to the cellular telephones of Plaintiff and Class Members.

58.        These calls were made without regard to whether Defendant had first obtained express written consent to make such calls. In fact, Defendants did not have prior express written consent to call the cell phones of Plaintiff and Class Members when the subject calls were made.

59.        Defendant violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic

12

telephone dialing system and/or an artificial or prerecorded voice to make marketing telephone calls to the cell phones of Plaintiff and Class Members without their prior express written consent.

60.       As a result of Defendant's conduct, and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls.

**WHEREFORE**, Plaintiff, Frank Eisenband, on behalf of himself and the other members of the Class, pray for the following relief:

a.  A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

b.  An injunction prohibiting Defendant from using an automatic telephone dialing system to call and text message telephone numbers assigned to cellular telephones without the prior express permission of the called party;

c.  An award of actual and statutory damages; and

d.  Such further and other relief the Court deems reasonable and just.

## COUNT II
### Knowing and/or Willful Violation of the TCPA, 47 U.S.C. § 227(b)
### (On Behalf of Plaintiff and the Class)

61.       Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

62.       At all times relevant, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

63.       Defendant knew that it did not have prior express written consent to make these calls, and knew or should have known that it was using equipment that at constituted an automatic

telephone dialing system, and/or that it was using an artificial or prerecorded voice in violation of the TCPA.

64.     Because Defendant knew or should have known that Plaintiff and Class Members had not given prior express consent to receive its autodialed/prerecorded calls, the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA.

65.     As a result of Defendant's violations, Plaintiff and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

**WHEREFORE**, Plaintiff, Frank Eisenband, on behalf of himself and the other members of the Class, pray for the following relief:

      a.  A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

      b.  An injunction prohibiting Defendant from using an automatic telephone dialing system to call and text message telephone numbers assigned to cellular telephones without the prior express permission of the called party;

      c.  An award of actual and statutory damages; and

      d.  Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff and Class Members hereby demand a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with the Defendant and the communication or transmittal of advertisements as alleged herein.

Date: May 12, 2017

Respectfully submitted,

**DeNITTIS OSEFCHEN PRINCE, P.C.**

*/s/ Stephen P. DeNittis*
Stephen P. DeNittis, Esq. (SD-0016)
525 Route 73 North, Suite 410
Marlton, New Jersey 08053
(856) 797-9951
sdenittis@denittislaw.com

**HIRALDO, P.A.**
Manuel S. Hiraldo, Esq.
*(Pro Hac Vice Pending)*
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
(954) 400-4713
mhiraldo@hiraldolaw.com

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis, Esq.
*(Pro Hac Vice Pending)*
14 NE 1st Avenue, Suite 400
Miami, Florida  33132
(305) 479-2299
efilings@shamisgentile.com